In the Matter of Mary Jane COLE and Martha Lynn Cole, Minors, Ora Cole, Petitioner, Donna Cole, Respondent.

No. 29197.

St. Louis Court of Appeals.

Missouri.

Jan. 18, 1955.

John L. Murphy, St. Louis, for petitioner.

Isaac C. Orr, Laura Andreas, St. Louis, for respondent.

HOUSER, Commissioner.

Ora Cole, natural mother of Mary Jane Cole, now age 15, and Martha Lynn Cole, now age 12, filed in this court a petition for a writ of habeas corpus seeking the custody of her children from their stepmother, the respondent Donna Cole, who has actual but not legal custody of the children. Petitioner alleged that she is the divorced mother of the children; that their father, Roy Cole, who had previously been given legal custody of the children by order of the divorce court, died on September 29, 1954; that she made demand for the children on respondent, widow of Roy Cole, but was refused; that she loves the children and is able to provide them with a home, and that no previous application for relief had been refused by any superior court or officer. Our writ issued, the children were produced in

court, and they were remanded to the custody of respondent pending a determination of the litigation. Respondent filed her return to the writ, expressing her desire and willingness to assume the care and upbringing of the children and raising the question of the fitness of petitioner to act as custodian of the children. In her answer to the return petitioner raised the question of the fitness of respondent to have the custody of the children. Pursuant to an order of reference entered by this court upon its own motion your Commissioner conducted a hearing and in obedience to the order of reference reported his findings of fact and conclusions of law and recommended that the petition be denied and that the custody of the children be awarded to respondent, reserving to petitioner certain visitation privileges. Petitioner filed no exceptions to the recommendations with reference to the granting of custody, but did file exceptions to the recommendations with reference to visitation privileges. A hearing on petitioner's exceptions was held and the cause was assigned to your Commissioner for the writing of a final opinion.

Petitioner's evidence consisted of the testimony of herself, her sister-in-law, her employer and a lady friend. Respondent testified and offered the testimony of thirteen witnesses in addition to the testimony of Mary Jane and Martha Lynn Cole and the several witnesses who identified documentary evidence.

Petitioner, age 48, married Roy Cole on October 16, 1929. The children who are the subjects of the present controversy are the issue of that marriage. On July 16, 1947, in a proceeding in the Circuit Court of the City of St. Louis, petitioner was granted a divorce from Roy Cole and was awarded custody of the two children, then aged 7 and 4 years. The court order reserved certain visitation rights to Roy Cole.

Both Roy and Ora Cole were members of Alcoholics Anonymous and after the divorce they continued to attend the meetings of that organization. At a meeting of A.A. in January, 1948 Roy Cole met Donna Day, who was also a member. Roy Cole

and Donna Day were married on September 18, 1948.

On February 9, 1948, without first obtaining permission from the court, petitioner took the two children and with one Seth Woodbury moved from this state to the State of California. Enroute and on February 14, 1948 petitioner and Seth Woodbury were married at Las Vegas, Nevada. Woodbury was then in the service of the United States Navy. For approximately six weeks he was stationed at San Bernardino, California. For the next three years Woodbury was transferred from post to post in many different states of the Union. His wife and these children accompanied him and at various times the family lived for comparatively short periods in California (twice); Las Vegas, Nevada; Holden, Missouri; Houston, Texas; Dixon, Missouri; Junction City, Kansas; Richmond, Virginia; Chicago, Illinois (three times), and in Richmond Heights, Missouri. For several months Mary Jane stayed with her aunt at Selma, Alabama, while Martha Lynn stayed with her mother in Indiana. The children attended school for varying periods in most of these places, except when their stay occurred during summer vacation periods.

On February 24, 1948 Roy Cole filed a motion in the divorce case to modify the order of custody, he having been deprived of his visitation privileges by the unauthorized removal of the children from the state. This motion, personally served upon petitioner on March 2, was sustained on March 22, 1948 and legal custody of the children was awarded to Roy Cole. Actual custody, however, was not obtained by him until April 19, 1951. In the three-year interim Roy Cole filed several applications for contempt citations at times when petitioner was visiting in St. Louis but the citations issued thereon were returned non est. Some two and one-half years after the order of March 22, 1948 and on September 6, 1950 petitioner filed a motion to set aside the order of March 22, 1948. On September 26, 1950 Roy Cole filed an amended motion that petitioner be cited for contempt of court. On January 12, 1951 the circuit

court sustained the motion for a contempt citation and denied petitioner's motion to set aside the order of March 22, 1948. She thereupon appealed the judgment to the St. Louis Court of Appeals. On April 19, 1951 petitioner, found in a tourist court in Kirkwood, Missouri, was produced before the circuit court under an attachment. Empty whiskey bottles were found in the tourist cabin. There was a pronounced odor of alcohol on her breath. She walked unsteadily on her feet and was taken, in an intoxicated condition, only partly dressed and with her hair unkempt, directly to the circuit court. On April 20, 1951 she was discharged from the attachment upon turning over the custody of the children to Roy Cole. The custody order provided that she have visitation privileges between the hours of 9 a. m. and 6 p. m. on alternate Saturdays and Sundays. Exactly one week later this order was modified, on motion, for good cause shown as a result of which her visitation privileges were restricted to visits with the children between the hours of 9 a. m. and 1 p. m. on Saturdays at the office of the Probation Department of the Court of Domestic Relations.

During the period in which petitioner and her children were following Seth Woodbury's various service assignments (from February, 1948 until April, 1951) the children were subjected to frequent scenes of argument and fighting between Seth Woodbury and their mother. She drank to excess. Arguments would ensue when Woodbury would come home and find her intoxicated, in which condition she kept herself most of the time. He beat her on numerous occasions in the presence of the children. He would strike her in the stomach until she was black and blue. The children testified that on one occasion while she was intoxicated and in the nude their mother was carried outside the house where they were living in Dixon, Missouri and dragged by Woodbury across the ground toward an automobile. Intoxicated a great deal of the time petitioner neglected her household duties and neglected the children, who were obliged to cook their own meals and do the house cleaning. The laundry was sent out.

Rarely did she prepare breakfast for the children. They would cook their own eggs, and if there were no eggs they would eat cornflakes. On occasions it was necessary for them to take money from their mother's coin purse in order to procure food. She would leave the children at home and stay away from the home both during the day and at night, without telling them of her whereabouts. Sometimes both the mother and Woodbury would leave the children and not come back until the next morning. At one Christmas Season petitioner took the money which Woodbury gave her for the purchase of Christmas presents for the children and bought whiskey with it. The children often tried to take whiskey away from her. On those occasions she would become angry and slap them, but ordinarily she was not cruel to them in a physical sense.

On April 19, 1951 the children sought refuge with their father. On that date petitioner and the children were at a tourist court in Kirkwood, Missouri. At her direction the children brought sandwiches, beer and whiskey to their mother. Because the sandwiches were not prepared to her liking the mother became angry and struck the older child. Although the children had heard that their father was "mean and terrible" and that his new wife was "bad" the children packed their bags, and while their mother was restraining the older child from leaving, Martha Lynn called the father on the telephone and asked him to come for them. The children were unable to tolerate the situation any longer. It was on that occasion that petitioner was hailed into court on a writ of attachment.

When the children came into the home of Roy and respondent Donna Cole they were in a highly nervous state. They were extremely excited, had a feeling of insecurity, and were emotionally disturbed. They had been frightened by the beatings their mother had received. They were upset by the many moves they had made. They had a sense of guilt from having to "steal" money from their mother's purse with which to buy food. They were distrustful of adults and could not believe

that their father would keep his promises. They had nightmares and every night would cry out "No, no, no" in their sleep. When awakened they would be frightened until they recognized their surroundings. They insisted on sleeping together although separate rooms were available. They would not permit their windows to remain open at night. They had many problems. Since they had been in so many schools they were frightened at the prospect of starting in another school. They were quite thin. Their attitude toward their mother was that although they loved her and wanted to see her, they pitied her on account of her drinking, regarding it as a sickness, and said they did not want to see her when she was drinking. Nor did they wish to go away with her. They stated that they would run away in the event she ever took them with her. Mary Jane was defiant, did not want to be loved or believe that people could love her, and did not seem to regard it as important that she try to get along with people. She was afraid that in some way she was to blame for her mother's drunkenness. A social worker told respondent that Mary Jane might be headed for mental illness. Martha Lynn was very clinging, wanted to be loved and had the idea that in order to be loved it was absolutely necessary that she be good at all times, not believing that one could be momentarily angry with a child and love the child at the same time.

In this situation the father Roy Cole sought and obtained psychiatric advice and treatment at Family Children's Service in Clayton, Missouri. Mrs. Gertrude Wagner, an accredited psychiatric social worker, worked with the children for a period of one year and three months in a successful effort to assist the children in attaining emotional stability and adjustment in their home and school life. During the three and one-half years the children have been in the home of their father and respondent they have received loving and considerate care and attention. Although respondent has made it clear to the children that her status is that of a stepmother, she feels like their real mother, loves them very much and is dedicated to the making of a home for them. The physical aspects of the home have been conducive to happy adjustment. The house, located at 6354 San Bonita, in Clayton, Missouri, is a 7-room brick 2-story home with three bedrooms and one and one-half baths. Each of the girls has her own bedroom. The physical welfare of the children has been attended to. Mary Jane has had her teeth straightened by an orthodontist. Martha Lynn has had a tonsillectomy. A pediatrician was called when necessary. Both children are gaining weight, their eyes are brighter, their cheeks are fuller, and they are much better physically than when they came to this home. The children are members of Eighth Church of Christ, Scientist, and attend the Sunday School regularly. They have perfect attendance records except for absences during summer vacation. Mary Jane is a sophomore in Clayton High School and Martha Lynn is in the seventh grade. Both are intelligent, alert, active girls and they are both making very good grades. Their grades have improved since they came to live with respondent and they have received very favorable progress reports. Mary Jane is interested in basketball, bowling and belongs to a social club. Martha Lynn is an avid Girl Scout who loves camping, entertainments and dramatics. At the age of 14 Mary Jane was not permitted to date. Since she has attained age 15 she has been allowed to go on several dates with boys whose parents are known to respondent. They are driven to and from the date by the parents. At age 15 Mary Jane is not permitted to go alone in the boys' car. In their normal home life the girls are happy, healthy, extroverted little girls. Both of them testified before your Commissioner. After relating the sordid details of their unhappy life with their mother and Seth Woodbury, each expressed a very definite choice in favor of their stepmother and against their mother. Mary Jane testified: " * * * I like our home and it is quite different from what we were used to. It is happy and I want it to stay that way. I love Donna and she has been taking good care of both of us." She testified that her visits with

her mother usually ended in an argument and that she would prefer to live with her stepmother and her sister where she is now living. She further testified that her mother "caused all the trouble." Martha Lynn testified: "Q. Do you like the home you are living in now? A. It is the first home I have ever had. Donna has been the best mother I ever had. I love Donna and Janie very much and I would not ever want to be taken away from her. Q. You would prefer to live with Donna before your own mother? A. Yes, there is no comparison to my feelings about her and my own mother." This testimony was given while the children were sitting within arms' length of their mother, the petitioner, who was looking directly at them when they testified.

When the children would visit with their mother at the Civil Courts Building in accordance with the court order of April 27, 1951 the children would come home angry and in ill humor. Likewise, on many occasions when their mother would talk to them on the telephone the children would leave the telephone in an angry mood. Petitioner, during the past three and one-half years, has threatened repeatedly to kidnap the children, communicating the threat to respondent both personally and by telephone, stating that she is going to have her children "one way or the other."

Mrs. Gertrude Wagner, the college trained social service worker who worked with the children from June, 1951 to September, 1952 and who has an intimate knowledge of their background, adjustment problem and its solution and of their present home, gave her opinion that the children are happy in respondent's home and that if they should be removed at this time from their home the effect would be "disastrous" for the children.

Mrs. Agnes Tanner, investigator for the domestic relations court, recommended that in view of the fact that the father is dead the children ought to be given to their mother, alhough she knew nothing of petitioner's living conditions or habits during the past year.

Petitioner has been an alcoholic since before 1946. Following her divorce from Roy Cole and during her marriage to Woodbury she continued to drink to excess. Three times during the year 1951 petitioner was confined to St. Vincent's Sanitarium under a diagnosis of "acute and chronic alcoholism." She was in that hospital from March 5–9, 1951, from November 28–December 2, 1951 and December 10, 1951–January 13, 1952. From August 15, 1952 to August 22, 1952 she was a patient at Edgewood Retreat Sanitarium, where her condition was diagnosed as "chronic alcoholism, acute episode." She entered DePaul Hospital on August 28, 1952 where she remained as a patient and was treated for lobar pneumonia and a duodenal ulcer condition for thirteen days. In June or July, 1952, prior to entering DePaul Hospital, she was intoxicated over a period of several days.

In September, 1952 petitioner left St. Louis and went to Houston, Texas, where she was provided with a home and employment by one of her brothers. She testified that she handled real estate for him and studied accounting at the University of Houston for two semesters. During the time she was in Texas she made four visits to St. Louis to see the children.

On May 11, 1953 Seth Woodbury filed a petition for divorce against petitioner in the Circuit Court of Crawford County, Missouri, charging that she had been addicted to the use of alcoholic liquors to an excess from the date of their marriage on February 14, 1948 and that "on divers times and occasions, in cities and towns in Missouri and Illinois," she had been picked up and booked by the police for drunkenness. On November 10, 1953 the court granted Seth Woodbury a divorce from petitioner, who had been personally served with process.

Shortly after June 29, 1954 petitioner came to St. Louis from Houston. She rented an apartment at the Sherman Hotel on July 2, 1954 in order to be near her daughters and visit with them. On July 12, 1954, the day petitioner planned to

check out of the hotel, the manager found her stretched across the bed, intoxicated and asleep. When advised of the situation a representative of a real estate firm by which petitioner was employed told the hotel manager to let her "sleep it off," stating that Mrs. Cole would either kill herself or somebody else. Thereupon the hotel manager took petitioner's automobile keys and locked the door to her hotel room. When she finally left the apartment beer and whiskey bottles and rotten garbage were scattered over the apartment and she had been sick in the bathroom. When she came to the hotel desk to use the telephone the manager could smell her breath. She was intoxicated. She told the manager that she had been in a fight the night before. She moved from the Sherman Hotel to the Park Plaza tourist motel in Kirkwood, Missouri. Up to this time petitioner had not been able to arrange a meeting with her children for the reason that the social worker in charge was on vacation and no one else in the office would act. Petitioner therefore called respondent on the telephone in an attempt to arrange for a visit with her children. In the course of the conversation respondent offered to permit the children to visit with petitioner on respondent's front porch but petitioner would not accept this invitation. An argument ensued, ending when petitioner hung up the receiver. Then she went to Roy Cole's place of employment where she engaged in an argument with him. He finally asked her to leave, under threat of calling the sheriff. She returned to the motel. Petitioner testified that because of the terrible emotional upset caused by these events she commenced to drink intoxicants. She claimed that this was the first drinking she had done since she left St. Louis twenty-two months previously. The motel janitor, at her request, bought and supplied her with a fifth of whiskey on each of several days. She became sick from excessive drinking and fouled up the room. Finally the janitor refused to get any more whiskey and told her that she did not need it. He also testified that a man (presumably a fellow member of A. A.) offered to pay him not to supply any more whiskey to her. The janitor would not go into the room because petitioner was only partly clothed and not presentable. Her condition having been reported to the motel manager the latter went to the room where he found her in bed, in an intoxicated condition. She raised up on her elbow, "just mumbling," then lay down. There were two whiskey bottles on the dresser. She had vomited on the carpet and in the bathroom. He ordered that she leave the place. Two friends, members of A. A., removed her from the motel to a private home, where she stayed for several weeks.

On September 29, 1954 Roy Cole died. This habeas corpus proceeding was instituted by petitioner on October 8, 1954.

Roy Cole left a will dated October 28, 1947, amended by codicil July 22, 1948, providing that his estate be held in trust for the benefit of his two daughters. The will provided that the trustee St. Louis Union Trust Company should in no event pay over to Ora Cole Woodbury any money or property for the support of his daughters and "if at any time my said daughters should be in the custody of or residing with said Ora Cole Woodbury, then the trustee shall take strict account before discharging any commitments for necessities, maintenance or support of my said daughters." Respondent was not mentioned, the will and codicil having been executed by the testator prior to his marriage to her. Cole's estate, of the value of $15,000 to $17,000, is in the process of administration. Respondent testified that she would elect to take a child's share in the estate. As surviving tenant by the entirety she became the owner of the residence at 6354 San Bonita, Clayton, which is valued at $20,000 and against which there is a mortgage for approximately $8,000.

For the past three and one-half years the children have been living with respondent at the home on San Bonita. Respondent has devoted her full time to her family and to the making of a happy and harmonious home for them. They are well cared for. This fact was attested by several neighbors and friends. If respondent is awarded the custody of the children they will continue

to live in this home and attend the same schools where they are now enrolled. Respondent does not plan to procure employment but intends to devote her entire time to the making of a home for these children. In addition to the financial resources above indicated, Mrs. Maude Bachman, mother of the deceased Roy Cole, has offered to contribute financial assistance. She is in a position to support such a promise. Mrs. Bachman strongly desires that respondent be given the custody of the children. Although not a member of a church, respondent is a student of Christian Science. She has attended to the religious lives of the children during the three years or more that they have been in her home. She testified to a very deep feeling of mutual affection as between the children and herself. She stated that she and the children love each other very, very deeply and that they are like her own children. She is ambitious for the children to have as much college education as possible and is proud of the talents the girls exhibit. She has talked to the older child about a career in art. Money has been specifically set aside for their college education if the children want it.

Respondent, who is now 39 years of age, and who had not been married prior to her marriage with Roy Cole, testified frankly that she became a chronic alcoholic and entered Malcolm Bliss Hospital for treatment for acute alcoholism on February 26, 1948 under the sponsorship of Alcoholics Anonymous, of which she was a member. She was there for three days. That was her last experience with alcohol. Her "dry date" is February 26, 1948. Since that time she has totally abstained from drinking anything alcoholic. This fact was attested to by numerous witnesses who have known her intimately and who have been in very close touch with her daily life. We are convinced that her reformation has been complete. In her personal rehabilitation she has demonstrated great strength of character. Roy Cole's "dry date" was just six months prior to that of respondent's. At no time after his marriage to respondent did he use intoxicants. Respondent is in good health, and has been for years. She is fully capable of taking care of the children. Considering her testimony and that of the other witnesses, as well as her appearance and demeanor in the courtroom before the full court and at the hearing before the Commissioner, we are satisfied that she is a person of integrity, good morals, high principles, superior intelligence and firm resolution who is genuinely attached to and interested in promoting the welfare of these children and dedicated to their proper upbringing.

For the past two or three months petitioner has been living in a small apartment at 5874 Cates Avenue in the City of St. Louis. If awarded the custody of the children she plans to rent a larger apartment. She has two particular apartments in mind, one of which is located in the same school district in which the children now live. Petitioner has been working for a real estate firm since July, 1954 but as of the date of the hearing on October 25, 1954 she had not as yet earned any commissions on sales. Her present financial resources consist of $3,200 in cash and an equity in a 1951 Chevrolet automobile. Carl Anderson, a well-to-do brother of petitioner who lives in Houston, Texas, has promised to help her financially with the children and, according to petitioner, he is willing to pay the additional expense of maintaining the children whether they remain with petitioner or are sent to a "fine boarding school." Another prosperous brother, Oscar Anderson of Salem, Illinois, is willing to help in any way possible. He and Mrs. Anderson are willing to take the children into their home, or adopt them. At Roy Cole's funeral Carl Anderson introduced himself to respondent and told her that the only plan for the children was to leave them in her custody. He offered respondent financial assistance, promising to do anything in his power to help. Later, after talking it over with his wife, he retracted the offer on the ground that if he did this his sister Ora would "sue the pants off of him."

Petitioner testified that she has been a member of the Baptist Church since 1931 or 1932 and that she joined a local Baptist

Church in St. Louis eight days before the hearing.

On the death of the father to whom the custody of the children had been awarded the divorce court lost jurisdiction to make further orders touching custody. Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841. By his death the natural right of petitioner as mother and surviving parent was revived and she became entitled to the custody of her children as against respondent, whose actual custody was without legal sanction, if and providing petitioner is a fit and suitable person. State ex rel. Walker v. Crouse, 240 Mo.App. 389, 205 S.W.2d 749. Parents as the natural guardians of their minor children are presumed to be fit and qualified to assume the custody of their children and the natural right of the parent should never be denied unless it is made manifest to the court that he or she for some strong and cogent reason is unfit or incompetent to take charge of the children, or unless the welfare of the children themselves, for some special or extraordinary reason, demands a different disposition at the hands of the court. Cox v. Carapella, Mo.App., 246 S.W.2d 513. In the case just cited we stated the standard by which fitness is to be judged. As applied here the question is whether petitioner has been guilty of wilful neglect to provide the children with proper care and maintenance and whether the children if placed in the custody of petitioner would be ill treated or that their lives, health or morals would be endangered by continued cruel treatment, neglect, immorality, gross misconduct or depravity on her part. Having raised the question of the fitness of petitioner to act as custodian as an affirmative defense, respondent had the burden of proof on the issue of fitness. Cox v. Carapella, supra; Williams v. Williams, 240 Mo.App. 336, 205 S.W.2d 949.

In the judgment of your Commissioner the respondent has sustained that burden and has clearly established that petitioner is unfit to take charge of the children and that their welfare, for compelling reasons, demands that they be placed in other hands. It is manifest that petitioner is suffering from chronic alcoholism as a result of which she is an unstable personality, living an unsettled life, without the present ability to provide these children with a proper home environment. It is evident that the health, morals and welfare of the children would be endangered in her hands by continued neglect, depravity and gross misconduct on her part.

Alcoholism destroyed the marriage of Roy and Ora Cole. Through the instrumentality of A. A. both sought to free themselves of its grip. Roy Cole succeeded but petitioner failed in this effort. He was able to regain mastery over himself, practicing sobriety and attaining respectability during the last six years of his life, remarrying and re-establishing his broken home for the benefit of his children. In contrast, the life of petitioner during the same six years is a sordid story of continuing drunkenness with its devastating by-products of physical illness, recurring hospitalization, personal degradation, disrespect for law, and a second failure in marriage. Her alcoholism is a very present thing. In May, 1953 her husband procured a divorce, alleging habitual drunkenness. Her automobile keys were kept from her while a guest at the Sherman Hotel in July, 1954 because of her drunkenness. She was ejected from the Park Plaza motel for the same reason on July 17, 1954. The latter occurrences took place only two and one-half months before the filing of this proceeding.

Since the divorce of Roy and Ora Cole in 1947 each of the two parties who are contending for the custody of these children has had their care for approximately the same length of time, some three and one-half years. The contrast in the surroundings, influence and atmosphere of the homes of the two parties and in the reaction of the children to these two totally different environments insofar as their appearance, health, happiness, progress, growth and development are concerned, is sharp and conclusive.

During the first of these three and one-half year periods the children were with petitioner. Instead of having set before

them the ennobling influence of good example they were exposed for more than three years, beginning when they were 9 and 12 years of age, respectively, to frequent and continuous scenes of drunkenness, fighting, physical abuse and brutality. They saw their mother frequently bruised and beaten by their stepfather. They were witness to almost continuous scenes of drunkenness. Because of petitioner's failure to measure up to her duty as a mother and homemaker the children were forced to do their own cooking and to perform the household tasks which ordinarily are performed for, and not by, children. They were subjected to privations, neglect and indignities of an intolerable nature. They were denied the love, affection, consideration, encouragement and inspiration which they were entitled to receive from their own mother, and had to shift for themselves. To add to their sense of insecurity the children were subjected to frequent moves from one city to another. This necessitated many interruptions and changes in their schools and living routines. As a result of more than three years of neglect, depravity and gross misconduct on the part of this petitioner and the stepfather these children became so insecure, fearful and excited that in order to restore them to normalcy more than a year, indeed fifteen months, of psychiatric treatment and special care in their new home were required.

In high contrast the children have flourished during the three and one-half years they have been with respondent. With her they have found their first real home. There is a deep and mutual feeling of genuine love and affection between the girls and the stepmother. Under her wholesome influence these children have developed and grown physically, mentally, emotionally and socially, from frightened and frustrated refugees into normal, well-adjusted and happy girls. They have a strong and impelling desire to remain with respondent. While they retain an affectionate feeling for their mother they pity her as the victim of a sickness, and lack confidence in her. Her conduct is repelling to them. If they are permitted to remain in their present environment the chances of their growing into normal, well-adjusted and useful citizens are quite favorable.

While it is important for every child to have a feeling of security and permanence concerning his home, this is especially true of these particular children. For the first few years of their lives their home was that of Ora and Roy Cole. Then there was a change and for a time Ora Cole was their sole custodian. Then came another change and Ora Cole and Seth Woodbury were their custodians, during which unfortunate era in their lives they had no feeling of permanence whatever, having been transported for years from one place to another over the length and breadth of the United States. For the past three and one-half years their home has been that of Roy and Donna Cole, which represented the fourth change in their custody. During this last period, in a favorable atmosphere, these children have thrived and prospered, sending their roots deep into family, school, church and social life. The wounds received in their earlier years have healed and the scars have almost disappeared. To uproot them again, after finally finding a solid rock upon which they are content to stand, might well undo all the good that fifteen months of psychiatry and three and one-half years of love, affection and proper care have wrought.

As a matter of fact the mother has little to offer these children, except the fact that she is the mother. Although she has manifested an abiding interest in the children since they were taken away from her by the circuit court it is not even claimed that she is cured of her chronic alcoholism or that she has reformed. She gave no indication that she intends to lead a different type of life from that which she offered the children when they were in her custody. She makes no present promises to leave liquor alone. Although one friend in A. A. gave as her opinion that petitioner had not taken any alcohol since she last saw her in July or August, petitioner testified that "we are never cured of alcoholism and an emo-

tional upset is what causes us to drink again." She gave no testimony as to what her plans might be for the future of these children. It is not clear whether she intends to keep them with her, or to place them with her sister-in-law in Salem, Illinois, either temporarily or for adoption, or to place them in a boarding school. Petitioner was equally indefinite about the schooling of the children if she prevails in this proceeding. At best the placing of these children with petitioner, subjecting them to new routines and standards of discipline, and an uncertain future, would be in the nature of an experiment which in the light of previous experience with petitioner should not be indulged. Neither her personal history nor her courtroom presence and demeanor is such as to inspire confidence in petitioner. In addition to her chronic alcoholism petitioner has demonstrated a persistent disregard for courts and constituted authority. When she took the children out of the state she knew she was defeating the visitation privilege allowed Roy Cole by the order of the court. Thereafter for several years she disregarded the orders of the court directing the return and surrender of the children to Roy Cole. For years she avoided numerous citations for contempt of court. When finally brought into court she was found guilty of contempt of court. She has declared for years that she is going to get her children one way or the other, threatening to kidnap them. Although she admitted facts showing that she is a persistent user of alcohol she sought to explain away the hospital records diagnosing her case as chronic and acute alcoholism by testifying that she entered Edgewood Retreat Sanitarium by mistake, not knowing what kind of a place it was and that she was sick at the stomach from ulcer trouble, thereby inferring that she was not there for alcoholism. Her positive testimony that prior to her entry in DePaul Hospital she had not been drinking was flatly contradicted by the impartial testimony of a member of A. A. who visited her apartment at the time and testified she was intoxicated and had been intoxicated for several days;

that as an aftermath of excessive drinking her apartment smelled so bad he could hardly stay in the place. She did not remember whether she was intoxicated when brought before the court on the attachment, although the officers of the law testified positively to her intoxicated condition. She sought to circumvent the testimony showing that she was so intoxicated at the Sherman Hotel that the manager was obliged to take her automobile keys from her by denying that she was intoxicated, claiming that she had lost the keys, and seeking to explain away the manager's testimony on the basis that she had left a few empty beer cans in the apartment, which made the manager mad. Petitioner still owes balances on the several hospital bills running into hundreds of dollars. In explanation she claims that in her divorce agreement Seth Woodbury assumed and agreed to pay the hospital bills and a bill for oil contracted while they lived in St. Louis, but Woodbury procured a default divorce and there is no record of any property settlement or agreement touching the payment of her bills.

█ Petitioner's objections to the introduction of evidence relating to petitioner's misconduct prior to September 29, 1954, the date of Roy Cole's death, were overruled by your Commissioner. While the parent's right to custody of his child must be determined with respect to existing conditions, evidence of past conditions is admissible to the extent that it clarifies and casts light on existing conditions. Cox v. Carapella, supra; Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949. The past pattern of petitioner's life and habits casts light upon the present condition of affairs and tends to form the outlines of the future.

It is apparent from the witnesses seen and heard by your Commissioner and from the documentary evidence, that it would be a mistake to force these children out of the only real home they have ever known, away from a person of whom they are very fond and who has evidenced genuine affection for and interest in them, and deliver them into the hands of one who, al-

though she is their natural mother, has treated them in a most unnatural manner, as the result of her regrettable addiction to a debasing and degrading habit.

While we are loath to make an order denying a mother her own children, this power must be exercised in proper cases upon the facts. Daugherty v. Nelson, Mo.App., 234 S.W.2d 353; Ex parte Kaufman, Mo.App., 262 S.W.2d 56.

It is therefore the recommendation of the Commissioner that the petition be denied and that the custody of Mary Jane Cole and Martha Lynn Cole be awarded to and that they be remanded to the custody of respondent Donna Cole, reserving to petitioner Ora Cole the privilege of visiting with the children from the hour of 12 o'clock noon until the hour of 6 o'clock p. m. on Saturdays at the home of petitioner as long as she resides in the City or County of St. Louis, or at such other places in said city or county as petitioner may determine, provided that such places of visitation be conducive to the welfare of the children, and that such visits shall in no event take place at times which will interfere with the education or health of the children. The order should further provide that at no time on the occasion of such visits shall petitioner permit herself to be or become under the influence of intoxicating liquor, and that petitioner shall not take the children out of the confines of the City and County of St. Louis without the written consent of respondent.

PER CURIAM.

After reading the testimony taken at the hearing before the Commissioner, examining the exhibits filed therewith, and after carefully considering the Commissioner's Findings of Fact, Conclusions of Law and Recommendations, together with petitioner's exceptions and the arguments of counsel in connection therewith, we are convinced that the Commissioner reached the correct and proper conclusion in the case, and we therefore adopt his opinion as the opinion of the court. It is, accordingly, ordered that the custody of the children, Mary Jane Cole and Martha Lynn Cole, be at once awarded to and that they be remanded to the custody of respondent Donna Cole, reserving to petitioner Ora Cole the privilege of visiting with the children from the hour of 12 o'clock noon until the hour of 6 o'clock p. m. on Saturdays at the home of petitioner as long as she resides in the City or County of St. Louis, or at such other places in said city or county as petitioner may determine, provided that (1) such places of visitation be conducive to the welfare of the children; (2) such visits shall in no event take place at times which will interfere with the education or health of the children; (3) petitioner shall not take the children out of the confines of the City and County of St. Louis without the written consent of respondent; and (4) at no time on the occasion of such visits shall petitioner permit herself to be or become under the influence of intoxicating liquor.

ANDERSON, P. J., and RUDDY, J., concur.