**In re D. L. W., a minor.**

**No. KCD 27757.**

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer
Denied Nov. 3, 1975.

Application to Transfer Denied
Jan. 12, 1976.

William E. Shull, Duncan & Russell, Gladstone, for appellant.

Rachel Hall Whipple, Kansas City, for respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

This appeal is rooted in the filing of a petition by the juvenile officer of Jackson County alleging the environment of D.L.W. to be injurious to her own welfare because the persons legally responsible for her care failed to properly provide such care because the child had bruises, contusions, a bump on the back of the head and chin, and rib and leg fractures. After a finding by the juvenile court that such child was in need of the care and services of the court, the court entered its order placing such child in the jurisdiction of the court. A subsequent order placed the custody of the child with the State Division of Family Services for placement in a foster home. The parents have appealed.

In the adjudicatory hearing, the juvenile officer introduced records from St. Luke's Hospital showing D.L.W. was admitted to St. Luke's Hospital on June 25, 1974. Her birthdate was shown to be April 13, 1974, and that she resided with her parents in Kansas City, Missouri. The records further disclosed that a chest x-ray showed healing rib fractures of the left seventh and the right fifth and sixth ribs and a non-displaced fracture of the proximal tibia. The record further contained the notation "battered child?".

The juvenile officer also offered a stipulation between counsel concerning the testimony of Dr. Herbert Davis, a board certified pediatrician, if he were to appear and testify. The stipulation recited that Dr. Davis had practiced for twenty-seven years and had been D.L.W's. doctor since her birth. He observed the child on June 25,

1974, at St. Luke's Hospital and noted bruises on her head and back. Because he suspected battering had occurred, he requested a skeletal survey. The survey revealed that one of the ribs had been broken in four places and the left tibia was partially fractured and the fractures were approximately three to six weeks old. The stipulation further stated in the doctor's opinion "the child's injuries conform to the classic description of a battered child, particularly the partial fracture of the left tibia which is the hallmark syndrome of child battering, being indicative of either a pounding or twisting action". With the introduction of these two documents, the juvenile officer rested.

After an unavailing motion to dismiss, the mother of the child testified both she and her husband, the child's father, were employed and a baby sitter had been hired to stay with the child while they were at work. The mother stated they had run an ad in the newspaper for a baby sitter, and after screening the applicants by examining their references, had hired one girl who appeared to be competent and qualified. She further stated that on June 7, 1974, the parents had returned home and noticed the baby sitter had left in an unusually hurried manner. Later, when the mother was changing the child, she noticed some bruises about the child's head. She stated her husband promptly called the police and the parents took the child to the emergency room at St. Mary's Hospital. She stated the Hospital examined the child but found nothing wrong. The parents told the police officers who came to investigate what had occurred. The mother further stated the police had made an investigation but the baby sitter had left the city and apparently no one knew her whereabouts.

On cross-examination the mother stated the same baby sitter had been hired twice subsequent to the time the bruises were noticed but no further injuries were noted after those occasions. The mother further stated that after June 7 the child did not improve and continued to be cranky and cried frequently. As a result of this, the mother stated the child was taken to St. Mary's emergency room on two other occasions, but she was told there was nothing wrong with the child. The mother testified that finally on June 25 the child's pediatrician, Dr. Davis, was called and the parents took the child to St. Luke's where Dr. Davis performed the examination which revealed the findings contained in the stipulation concerning his testimony.

At the conclusion of the mother's testimony all parties rested and the juvenile court found that a prima facie case had been made and the court found the allegations in the juvenile officer's petition to be true. The court ordered that jurisdiction of the child be taken under the provisions of § 211.031, RSMo 1969. The court ordered a subsequent hearing as to disposition and as already noted at the conclusion of this hearing, ordered custody of the child removed from the parents.

On this appeal the parents vigorously contend there is insufficient evidence to support a finding by the court that the environment of the child was injurious to her own welfare and the court erred in taking jurisdiction of such child under § 211.031. The parents argue forcefully that the evidence did not show the parents had committed any acts of abuse on the child but on the contrary, showed the abuse had been committed by the baby sitter, and further that no negligence had been shown on the part of the parents in the selection of the baby sitter, with the result the parents could not be held responsible for the injuries suffered by the child.

§ 211.031 provides "the juvenile court shall have exclusive original jurisdiction in proceedings: (1) Involving any child who may be within the county who is alleged to be in need of care and treatment because: (c) the behavior, environment or associations of the child are injurious to his welfare or to the welfare of others; . . . ."

In any proceeding involving child custody, the consideration of supreme im-

portance which overrides all others is the welfare of the child. *In Re J.L.L.*, 402 S.W.2d 629 (Mo.App.1966). In this case the court was considering the environment and welfare of a two-month old child who had been physically battered to the point of inflicted fractured ribs and a fractured leg. There is no contention on the part of the parents that such injuries were or could have been accidentally suffered. On the contrary, the parents admit the child was battered but claim the deed was done by a baby sitter.

For a child of this age to have the injuries inflicted upon it as described in this case, it can hardly be debatable but that the environment of such child was injurious to its welfare. It was not necessary to prove, as in a criminal case, whether the parents actually inflicted the injury or whether such injury was inflicted by someone else. This is not a criminal proceeding and so the niceties of proving precisely who committed the act is not a necessary ingredient in determining whether or not the juvenile court should assume jurisdiction over this child. The sole question for determination is whether or not the environment of this child was injurious to its welfare. When intentional injuries are inflicted as they were in this case, then the answer to the question before the court becomes self-evident.

The nature and extent of the injuries and the fact such injuries were admittedly intentionally inflicted, constitutes more than substantial evidence to support the court's finding that the environment of this child is injurious to its welfare and to justify the court in assuming jurisdiction of such child.

The parents further contend that even if the court properly assumed jurisdiction over the child, the court erred in removing the custody of the child from the parents. The parents cite a number of cases stating the general rule that natural parents have a primary right to the custody of their children and must be considered fit and qualified to exercise that natural right. This court has no argument with the general rule as stated in *Cox v. Carapella*, 246 S.W.2d 513 (Mo.App.1952). However, such general rule has well recognized exceptions which permit the court to remove the child from the parent's custody upon a finding that the parents are in fact unfit to have such custody. *State v. Pogue*, 282 S.W.2d 582, 588[6–9] (Mo.App.1955).

In this case the court received evidence at the hearing as to what disposition should be made of the custody of the child. This evidence consisted in part of the juvenile file. This file reveals the mother of the child in this case had one child which was taken from her custody by the juvenile court of Jackson County in 1967 on a finding that the environment of such child was injurious to his welfare, and another child was removed from her custody on the same grounds in 1965. The file also reveals another child was taken from the custody of this mother by the juvenile court in 1965 on a finding that the parents neglected to provide her with proper support and other care necessary for her well being. This evidence was sought to be introduced by the juvenile officer at the adjudicatory hearing but objections to such evidence were sustained. Such evidence was properly received at the dispositional hearing and was also admissible in the adjudicatory hearing. This evidence showed past conduct on the part of the mother. The courts of this State have long admitted evidence of past conduct on the part of parents in determining the suitability of the parents to custody of their children. *In Re Cole*, 274 S.W.2d 601 (Mo. App.1955). Evidence of mistreatment of other children has been held admissible in considering the welfare of another child. *In Re Phelps*, 145 Mont. 557, 402 P.2d 593 (1965).

Also at the dispositional hearing the court received evidence from a psychologist at the Western Missouri Mental Health Center that both parents in this case fit the child abuse profile. This witness testified

that in her opinion the parents were in a high risk category with reference to the probability of child abuse occurring in their home. This evidence was also properly received at the dispositional hearing and would also have been properly received in the adjudicatory hearing as being relevant to show the environment in which this child was living. *In Re J.Z.,* 190 N.W.2d 27 (N.D. 1971).

Under § 211.181 the court had the discretion to place this child back in the home of its parents under supervision or in custody of a relative or other suitable person, or commit the child to the custody of a public agency. Here the court exercised the discretion vested in it by this Section and committed the custody of the child to a public agency. In view of the evidence outlined herein, this exercise of discretion is not abused. That is not to say that in every case involving child battering a court must remove the child from the custody of the parents because it may well be a court would conclude that under all the facts and circumstances the child would be safe by maintaining the child's custody in the parents under supervision. However, in this case in view of the evidence of past mistreatment of the children of this mother, and of the expert testimony that the parents in this case were in a high risk category with the probability of child abuse occurring in their home, the court was more than justified in placing custody of this child in a public agency.

The psychologist further testified that perhaps with counseling and other aids the parents in this case might well become adjusted to the point that they would not constitute a high risk to the safety of this child. Of course, the juvenile court has continuing jurisdiction and may make further orders concerning the custody of the child as the court may deem necessary to be in the best interest of the child.

The judgment is affirmed.

All concur.