THE STATE ex rel. SAMUEL A. DEW, Judge of Circuit Court, v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

In Banc, February 17, 1925.

1. **JURISDICTION:** Juvenile Court and Divorce Court: Neglected Child. In a suit for divorce the circuit court had awarded the cus-

State ex rel. Dew v. Trimble.

tody of a minor child to the mother, and retained jurisdiction for the purpose of making future orders pertaining to the child's custody. Afterwards, upon an application by a probation officer and the father to the juvenile court, alleging that the mother had "neglected" the child, the court awarded the child to the custody of the father. *Held*, that the Court of Appeals in ruling that the jurisdiction of the juvenile court is paramount and not concurrent with the incidental jurisdiction which a divorce court may have in the premises; that by the Juvenile Court Act the State has elected to exert its power, *parens patriae*, with respect to children which fall within the statutory definition of "neglected" and "delinquent;" that it has vested the juvenile court with exclusive jurisdiction to determine and provide the custody of such children; and that,' when the juvenile court has in a given case assumed jurisdiction of such a child, its jurisdiction supersedes that of any and all other courts touching the same subject-matter, did not contravene the decision of this court in the case of In re Gladys Morgan, 117 Mo. 249, or in any case.

2. ————: Judgment of Juvenile Court: Mere Recital that Child is Neglected. A mere recital in the judgment of a juvenile court that it appears to the court from the evidence that a certain child, aged five years, "is neglected," and she is therefore ordered to be made "a ward of the court and committed to her father," does not constitute a valid judgment, for the reason that it does not meet the requirement of the statute (Sec. 2594, R. S. 1919) that the court "shall determine that the child is a 'neglected child' within the definition thereof contained" in Section 2591. In its definition of the words "neglected child" the Legislature has carefully, expressly and explicitly limited the jurisdiction it has conferred on juvenile courts, and whenever such a court undertakes, on the score of neglect, to supervise the care and custody of a child who is not "destitute, or homeless or abandoned," etc., it is merely an intermeddler, and its judgment is a nullity.

3. ————: ————: ————: Collateral Attack. The judgment of the juvenile court being void, in that it merely recited that it is found from the evidence that the five-year old child "is neglected," and did not find the existence of any specific condition which would have placed the child within the statutory classification of a "neglected child," and did not find generally that she was a "neglected child" within the statutory definition of those words, said judgment was subject to collateral attack; and said judgment (having declared that said child "be made a ward of the court and committed to her father") was no impediment in the way of the *habeas*

State ex rel. Dew v. Trimble.

*corpus* suit of the mother, to whom the child was awarded by the divorce court, to recover possession of said child.

4. ———: **Special Powers: Rule of Collateral Attack: Applicable to Personal Rights.** Where a court of general jurisdiction proceeds to the exercise of special powers wholly derived from the statute, and not exercised according to the course of the common law, its jurisdiction must appear in its record, and cannot be presumed in a collateral proceeding. And while that rule has usually been applied to proceedings to enforce tax liens or the power of eminent domain, there is no reason why it should not be equally applicable to proceedings in which the State seeks to effect a forfeiture of the natural rights of parents to the custody of their minor children. In all such cases, jurisdiction to exercise a special statutory power cannot be presumed, but must appear from the record.

Citations to Headnotes: 1, Courts, 15 C. J. par. 518; and Infants, 31 C. J. par. 7; 2 to 4: Judgments: 2, 34 C. J. par. 851 (1926 Anno); 3, 34 C. J. par. 844; 4, 34 C. J. par. 843.

## *Certiorari.*

QUASHED (*in part*).

*J. B. McGilvray, Frank G. Warren* and *John H. Lucas* for relator.

(1) The opinion and judgment of the Kansas City Court of Appeals is contrary to the principles enunciated by this court to the effect that the circuit court, having made an order concerning the disposition of the minor child of parents involved in divorce proceedings, has continuing jurisdiction of the child, excluding another division of the same court, acting as a juvenile court, from taking subsequent independent jurisdiction thereof upon petition filed in the same cause by the losing party in the divorce action. In re Morgan, 117 Mo. 249; State ex rel. v. Reynolds, 209 Mo. 161; State ex rel. Matacia v. Buckner, 254 S. W. 179; State ex rel. Shoemaker v. Hall, 257 S. W. 1047. (2) Want of jurisdiction over person or subject-matter is always ground for relief on *habeas corpus.* Ex parte See, 241 Mo. 293; Ex parte

Craig, 130 Mo. 593; Ex parte O'Brien, 127 Mo. 256; Ex parte Bedard, 106 Mo. 627; Ex parte Creasy, 243 Mo. 679; 29 C. J. 30. (3) On the face of the record it is shown that the juvenile court had no jurisdiction over the person of Margaret M. Marty to make the order awarding the custody of the child. (a) Because the complaint on which the order of the juvenile court is founded does not allege that the child is a resident of Jackson County, Missouri, or that it has been neglected in said county. State ex rel. Emory v. Porterfield, 244 S. W. 967. (b) Because the complaint does not set out any statutory grounds of neglect. Ex parte See, 241 Mo. 293; State v. Asher, 216 S. W. 1013; Brana v. Brana, 139 La. 306; State v. Rose, 125 La. 1080.

*Hunt C. Moore* and *Ilus M. Lee* for respondents.

(1) The opinion of the Kansas City Court of Appeals follows the plain letter of the statute law of this State; it is not in conflict with any decision of this court, and it is fully supported by parallel cases from other states. Laws 1911, p. 177, et seq.; Secs. 2591 to 2613, R. S. 1919; In re George Hosford, 107 Kan. 115, 11 A. L. R. 142, and notes; State v. McCloskey, 136 La. 739; Brana v. Brana, 139 La. 306; Buffington v. Goldman, 152 La. 647. (2) No case has heretofore been considered by this court in which was involved the question of whether a juvenile court could take jurisdiction of a "neglected child," whose custody has been previously adjudged, as between the parents of such child, in a divorce action, and it follows that the writ of *certiorari* must be quashed, because in a proceeding of this nature this court is concerned solely with the question of conflict. State ex rel. Ins. Co. v. Allen, 262 S. W. 43; State ex rel. Ins. Co. v. Reynolds, 290 Mo. 362; State ex rel. Packing Co. v. Reynolds, 287 Mo. 697; State ex rel. Snyder v. Trimble, 262 S. W. 697; State ex rel. Bush v. Sturgis, 281 Mo. 598; State ex rel. Assurance Co.

v. Allen, 259 S. W. 77; State ex rel. Ins. Co. v. Allen, 295 Mo. 307.

RAGLAND, J.—*Certiorari* to the Kansas City Court of Appeals. The opinion sought to be quashed is one that was rendered by that court in a cause lately pending before it, entitled: "State of Missouri at the relation of Laorine A. Marty, Relator, v. Samuel A. Dew, Judge of Division 6 of the Circuit Court of Jackson County, Missouri, Respondent." The opinion follows:

"This is an original proceeding in *certiorari* to review the record in a *habeas corpus* case in Division 6 of the Circuit Court of Jackson County, Missouri, over which respondent presides as judge. The *habeas corpus* proceeding was brought by the mother in behalf of her minor child, Margaret M. Marty. Respondent ordered the child returned to the custody of her mother in accordance with an order of said court made upon the final hearing of a divorce case in which the mother, Olive B. Marty, was plaintiff, and L. A. Marty, relator herein, was defendant. Respondent has filed a return to the writ, containing the record of the proceedings in the *habeas corpus* case.

"The facts show that the divorce was granted by said court to the plaintiff therein in February, 1920, the decree awarding the custody of the child to the mother, and providing for alimony and maintenance for the child. In the decree the court retained jurisdiction to change the order with reference to the disposition of the child. No application was ever made by anyone in the divorce court to modify or change the decree awarding the custody of the child to its mother, but on May 8, 1923, relator filed a petition in the juvenile court, being another division of the same circuit which granted the divorce, but as separate therefrom as one circuit court is from another existing in this State (Cole v. Norton, 251 S. W. 723), charging that the child was an infant under the age of seventeen years, not an inmate of a state or other

institution, and was a neglected child within the meaning of the law, in that its mother 'neglects and fails to properly care for said Margaret M. Marty.' The trial in the juvenile court resulted in the rendition of a judgment 'that Margaret Marty is neglected' and 'it is ordered by the court that Margaret Marty be made a ward of the court and committed to her father, L. A. Marty.' The record shows that relator secured possession of the child and was in possession of her at the time the *habeas corpus* proceedings were instituted.

"The ground upon which the possession of the child was awarded to the mother by respondent, was that the order made in the divorce case gave the court that made it exclusive and continuing jurisdiction over the matter of the custody of the child and as that court had first obtained jurisdiction over the child, the juvenile court had no right to interfere, and as the divorce court had never made any further alteration of its decree relating to the custody of the child, that custody having been awarded to the mother, she was entitled to the child.

"The petition for the writ of *habeas corpus* merely set up the order of the divorce court awarding the child to the mother and alleged that the father had forcibly taken possession of the child from the mother and that the petitioner was entitled to its possession; that the father was in illegal and unlawful possession of the child and prayed for its return to the custody of the mother. The answer of the respondent therein, the relator herein, set up the proceedings and judgment of the juvenile court in support of his right to retain the custody of the child. No reply was filed by the petitioner therein, but we need not go into the matter as to the effect of the failure to file a reply, as we are of the opinion that the court should not have taken the custody of the child from this petitioner in any event, and it is not necessary for us to decide this case on any technical matter, but we will consider it in the light of the theory of respondent, which is expressed in his brief as follows:

" 'It will be seen that the main question involved is: Does the circuit court, having made an order concerning the disposition of a minor child of parents involved in a divorce proceeding, having continuing jurisdiction of the child, preclude the juvenile court from taking independent jurisdiction thereof upon a petition filed in the cause by the losing party in the divorce action?'

"The question as to whether the juvenile court has jurisdiction under the statute creating it, Article VI, Chapter 21, Sections 2591 to 2613, inclusive, Revised Statutes 1919, over a neglected child whose custody has been awarded in a divorce court, which order in express words retains jurisdiction over the child, has not been decided in this State. The juvenile court statute provides, Section 2591, that:

" 'For the purpose of this article, the words ''neglected child'' shall mean any child under the age of seventeen years, who is destitute or homeless, or abandoned, or dependent upon the public for support, or who habitually begs or receives alms, is found living in any house of ill-fame, or with any vicious or disreputable person, or who is suffering from the cruelty or depravity of its parents, or other person in whose care it may be; and any child who while under the age of ten years is found peddling or selling any articles or singing or playing any musical instrument for gain upon the street or giving any public entertainments or accompanies, or is used in any aid of, any person so doing.'

"The statute also provides for jurisdiction of the juvenile court over delinquent children, defining who shall be such. The divorce statute, Sections 1806 and 1812, Revised Statutes 1919, gives the court granting the divorce power to award the custody of the child of the parties and to retain jurisdiction over it as a ward of the court, and gives authority to that court to modify the decree as to the custody of the child from time to time as the circumstances change. [In re Gladys Morgan, 117 Mo. 249, 254, 255.] There are a number of cases

in this State holding to the effect that this jurisdiction is continuing and exclusive. [See Meredith v. Krauthoff, 191 Mo. App. 149; In re Kohl, 82 Mo. App. 442; Phipps v. Phipps, 168 Mo. App. 697; In re Gladys Morgan, supra; Barnhart v. Barnhart, 253 S. W. 56.] Many other cases might be cited, most of which were decided before the enactment of the juvenile court statute and some since, but in none of them is the juvenile court law involved or mentioned.

"Juvenile courts are of comparatively recent origin in this country and the decisions of the courts on the question of their jurisdiction, where the question of conflict has arisen, are but few. However, there are some decisions that throw light upon the question. The case of In re George Hosford, 107 Kan. 115, was decided upon statutes similar to our divorce and juvenile court statutes. In that case it appears that the divorce court had awarded the custody of the child to the father; thereafter the juvenile court made a finding that the child was neglected, and gave the child to a children's aid society. Thereafter the child's mother applied to the divorce court asking that the divorce decree be modified so that the custody of the child be given to her, which was done. In this last proceeding, the superintendent of the aid society was put upon the stand and refused to answer a question as to the whereabouts of the child and the court adjudged him in contempt. He applied to the Supreme Court of Kansas for a writ of *habeas corpus*. In discharging the petitioner the court held that the juvenile court had jurisdiction, and that the divorce court had no right to proceed in the matter, notwithstanding the fact that it was given continuing jurisdiction under the divorce statutes. And to the same effect are the cases of State v. McCloskey, 136 La. 739; Brana v. Brana, 139 La. 306. The Hosford case is also reported in 11 A. L. R. 142. In the notes to that case in A. L. R. we find the cases we have cited discussed. In relation to these the editor says:

" 'The assumption of jurisdiction over a child by a juvenile court frequently raises intricate jurisdictional questions, since the statute which establishes such a court does not always clearly define the limitation which is thus imposed on the jurisdiction of another court. Judicial determination of this limitation on the jurisdiction of another court appears, at the present time, to be in a formative stage; but there are several well-considered decisions on the question, almost all of which reflect a disposition to construe the power of a juvenile court liberally, in view of the purpose for which it was created, even though considerable re-adjustment is required with respect to the jurisdiction formerly reposed in other courts.'

"An examination of our juvenile-court statute discloses its purpose to give that court jurisdiction broadly over neglected and delinquent children and confers on that court wide discretion in exercising its jurisdiction. The high purpose of the Legislature in creating the court is set forth in Section 2612, Revised Statutes 1919, as follows:

" 'This article shall be liberally construed to the end that its purpose may be carried out, to-wit, that the care, custody and discipline of the child shall approximate as nearly as may be that which should be given by its parents; and that as far as practicable any delinquent child shall be treated, not as a criminal, but as misdirected and misguided, and needing aid, encouragement, help and assistance.'

"The authority conferred upon the court is the fullest. Section 2598, Revised Statutes 1919, provides: 'All punishments and penalties imposed by law upon persons for the commission of ` offenses shall, in the case of said delinquent children, rest in the discretion of the judge of the juvenile court, and execution of any sentence may be suspended or remitted in his discretion.'

"Sections 2591 and 2607, Revised Statutes 1919, provide that the juvenile court shall not lose jurisdiction

over the child. The Supreme Court has said of the juvenile court that it is not a criminal court, and proceedings in it are not criminal, but merely the exercise of the State's power as '*parens patriae* for the reformation of the child and not for his punishment under criminal law.' [State v. Buckner, 254 S. W. 179, 181.] Other courts have referred to the proceeding in the juvenile court as '*quasi*-criminal' but all construe the proceeding as having the same purpose, the welfare or reformation of the child. Our statute creating the juvenile court is a most salutary one, and while in express terms it does not exclude jurisdiction of other courts in matters governed by it, the powers granted it by the statute should be paramount and construed liberally.

"Respondent calls our attention to the case of In re Gladys Morgan, supra, wherein the Supreme Court construed the divorce-and-custody statute with our Habeas Corpus Statute. The latter statute, Section 1945, Revised Statutes 1919, provides that in a *habeas corpus* proceeding between husband and wife for the custody of their child, the court may award the custody to the complainant or other guardian as shall be deemed best, and that the order shall remain in force during any period which shall be fixed by the court within the minority of the child. The Supreme Court in the In re Gladys Morgan case held that where the divorce court has assumed jurisdiction over the custody of the child under Sections 1806 and 1812, another court could not change that custody in a *habeas corpus* proceeding, although the Habeas Corpus Statute seems to be general. We think there is quite a difference between the Juvenile Court Act and the Habeas Corpus Act. While in awarding the custody of the child under the divorce statute the guiding star is always the welfare of the child, the divorce statute provides for the awarding of that custody only in a case between husband and wife, and no other person may intervene in a case under that statute for the purpose of changing that custody. The

statute creates a cause of action solely between the father and the mother, while the Juvenile Court Statute, Section 2593, provides that 'any reputable person' of the county may start a proceeding to declare a child a neglected one. The juvenile court' creates a proceeding between the State and the child, or its parents, or a person in whose custody it is. The awarding of the custody of a child under the Habeas Corpus Act is also a proceeding 'instituted between husband and wife' for the custody of the child. The Habeas Corpus Act does not provide the wide powers in that kind of a proceeding that is given the juvenile court under the Juvenile Court Act. On the other hand there does not seem to be any reason why the Habeas Corpus Statute should permit interference with the jurisdiction of the circuit court to make orders in divorce cases pending before it.

"The Juvenile Court Act as regards delinquent children provides for their incarceration in some instances in the Missouri Training School for Boys and the State Industrial School for Girls. Section 2591 provides: 'that when jurisdiction has been acquired under the provisions hereof over the person of a child, such jurisdiction shall continue, for the purpose of this article, until the child shall have attained its majority; but nothing in this article shall prevent the juvenile court from inflicting a punishment which shall extend beyond the age of majority in cases where the delinquent shall be convicted of a crime, the punishment of which under the statutes of this State, when committed by persons over the age of eighteen years, is death or imprisonment in the penitentiary for a term of not less than ten years.'

"It will thus be seen that the act provides for a proceeding against the child which might result in his imprisonment, as for the commission of a crime, although merely for reformatory purposes and not as a punishment. The jurisdiction conferred on the juvenile court is essentially different from that created in a divorce statute, and ought not to be interfered with by a di-

vorce court whose processes cannot be put into an action except upon the petition of one of the parents. The divorce statute expressly provides that change of custody shall be made on application of one of the parties. A distinction has been suggested between the jurisdiction of the juvenile court over a neglected child and that over a delinquent one. Such distinction can only be based upon the theory that a proceeding against a neglected child is one for reformation. However, we do not think this distinction a sound or a logical one. Proceedings against both kinds are for the purpose of promoting the welfare of the child. Either proceeding might result in the change of the custody of the child. Of course, a divorce court can award custody with the idea of a reformation of a delinquent child, but only in case of an application of one of the parents. So, too, it may provide for the welfare of a neglected child, but only upon the petition of one of the parties to the action, but the custody need not be awarded necessarily to either parent. The Juvenile Court Statute in express terms is made to apply to children 'under the age of seventeen years' who come under the definition of the act as a neglected or delinquent child, without any exception being made. As was stated in In re Hosford, supra, l. c. 117:

"'The continuing jurisdiction of a court which has granted a divorce to supervise the custody of minor children of the parties cannot be interfered with by another court which, except for such retained jurisdiction, would have authority under a writ of *habeas corpus* to make the same inquiry and grant the same relief. [In re Petitt, 84 Kan. 637, 114 Pac. 1071.] The juvenile court, however, stands upon a very different footing. It is specifically given jurisdiction 'of all cases concerning dependent, neglected and delinquent children.' [Gen. Stat. 1915, Sec. 3065.] The conditions under which it may take control of a child and the manner in which it may exercise it are quite different from those existing in the case of any other tribunal.'

"We think, then, that the jurisdiction of the juvenile court is paramount and not concurrent with the incidental jurisdiction which a divorce court may have in the premises. [Brana v. Brana, supra, 1. c. 311.] As stated in State v. McCloskey, supra, 1. c. 742, the two courts 'may have simultaneous, though not concurrent or conflicting, jurisdiction of the custody of the child.' The Juvenile Court Statute, Section 2591, provides in express terms that when the juvenile court shall have obtained jurisdiction over the child of the character mentioned therein, it shall continue until the child shall have reached its majority.

"Our attention has been called by respondent to the case of Orphan Asylum v. Soule, 5 Ohio App. 67, which apparently is authority in support of respondent's contention and against our holding. That case, however, was criticised in the notes to the case of In re Hosford, supra, in the following language:

"'However, in Cleveland Protestant Orphan Asylum v. Soule (1915), 5 Ohio App. 67, it was held that, where a district court in a divorce decree has assumed jurisdiction of the custody of a child, its disposition of that matter could not be disturbed by any order of a juvenile court. In this decision the Ohio statutes conferring power on juvenile courts were construed to limit the application of such power to children not already provided for by some other court previously obtaining jurisdiction. This decision appears to be in conflict with the current authority.'

"We are unable to agree with the reasoning contained in the opinion in the Ohio case and therefore refuse to follow it and prefer to follow the Kansas and Louisiana cases cited by us.

"We fail to see what difference it makes as to the jurisdiction of the juvenile court as to who makes the petition to that court. Section 2593 provides that: 'Any reputable person . . . having knowledge or information of a child, who appears to be a neglected child, may

file with the clerk of the juvenile court a petition, in writing, setting forth the facts.' If the petition is filed by the losing party, or the disappointed one, in the divorce proceeding, as is the case here, the juvenile court no doubt would naturally take that fact into consideration in passing upon the question of the neglect of the child.

"It is claimed that on the face of the record it is shown that the juvenile court had no jurisdiction to make the order awarding the custody of the child. At the hearing of the *habeas corpus* proceeding the records of the juvenile court were introduced in evidence by agreement of the parties. The petition alleges that the petitioner is a resident of Jackson County and a reputable person and charges that the child is under the age of seventeen years and 'is a neglected child within the meaning of the law;' that the mother in whose custody the child was 'neglects and fails to properly care for' the child, and prays that the matter be inquired into, but it does not, as contended by the respondent, allege that the child was a resident of Jackson County, Missouri, or that it was neglected in that county, nor does it set out specifically any of the grounds of neglect mentioned in Section 2591, Revised Statutes 1919. It seems that respondent admits that this is, and was in the *habeas corpus* proceedings a collateral attack upon the judgment of the juvenile court, and we think so. [Hartman v. Henry, 280 Mo. 478; Brana v. Brana, supra.] But respondent urges that the petition shows on its face that the juvenile court had no jurisdiction. However, it is well settled: 'That the judgment of a court of general jurisdiction, having the parties to the controversy before it and having power to determine the class of cases for which relief is prayed, is not void because of the failure of the petition to state a cause of action, and is not, for that reason, open to collateral attack, is a proposition established in this State, and sustained by the overwhelming weight of authority elsewhere.' [Cole

v. Parker-Washington Co., 276 Mo. 220, 272; Sidwell v. Kaster, 232 S. W. 1005, 1008.] Without passing on the question as to whether the petition would be sufficient in a direct attack upon the proceedings, we are of the opinion that it is sufficient in a collateral attack.

"From what we have said the respondent exceeded his jurisdiction in removing the child from the custody of relator. *Certiorari* is a proper remedy. [State ex rel. v. Buckner, 198 Mo. App. 230.] The judgment of the circuit court presided over by the respondent in the *habeas corpus* matter is quashed. All concur."

Two rulings as set forth in the opinion just quoted are alleged to be in conflict with rulings of this court. The rulings complained of are: First, "that the jurisdiction of the juvenile court is paramount and not concurrent with the incidental jurisdiction which a divorce court may have in the premises;" and, second, that the judgment of the juvenile court (the specific one referred to in the opinion) is valid as against collateral attack.

The first ruling is said to be in conflict with In re Gladys Morgan, 117 Mo. 249, and cases following it. The Morgan case applies to actions between husband and wife involving the custody and control of their minor children on the familiar principle that, when a court of competent jurisdiction acquires jurisdiction over the subject-matter of a case, its authority continues, subject only to appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate jurisdiction is at liberty to interfere with its action. The holding of the Court of Appeals is, in effect, that by the Juvenile Court Act the State has elected to exert its power, *parens patriae,* with respect to children which fall within the statutory definitions of "neglected" and "delinquent;" that it has invested the juvenile court with exclusive jurisdiction to determine and provide the care and custody of such children; and that, when the juvenile court has in a given case assumed jurisdiction with respect to any

*Courts of Concurrent Jurisdiction.*

such child, its jurisdiction supersedes that of any and all other courts touching the same subject-matter. This ruling does not conflict with In re Gladys Morgan or any other decision of this court. We have never had occasion to pass upon the question. We observe, however, that the conclusion of the Court of Appeals is in accord with that reached by eminent courts of other jurisdictions, as its citations show.

Whether the second ruling of the Court of Appeals that, the judgment of the juvenile court, which it had under review, is immune to collateral attack, is in conflict with decisions of this court cannot be so easily disposed of. The judgment as disclosed by the record is as follows:

Neglected Child: Collateral Attack.

"Now on this day comes the case of Margaret Marty, age five years, not in person, by probation officer and father, and it appearing to the court from the evidence that said Margaret Marty is neglected, it is ordered by the court that Margaret Marty be made a ward of the court and committed to her father, L. A. Marty."

The term "neglected child" is defined in the Juvenile Court Act as follows: "For the purpose of this article the words 'neglected child' shall mean any child under the age of seventeen years, who is destitute, or homeless, or abandoned, or dependent upon the public for support, or who habitually begs or receives alms, is found living in any house of ill-fame, or with any vicious or disreputable person, or who is suffering from the cruelty or depravity of its parents, or other person in whose care it may be; and any child who while under the age of ten years is found peddling or selling articles or singing or playing any musical instrument for gain upon the street or giving any public entertainments or accompanies or is used in any aid of any person so doing." [Sec. 2591, R. S. 1919.] Another section of the act provides: "On the return of the summons or other process, or as soon thereafter as may be, the court shall proceed to hear the case in a summary manner, and if it shall determine

that the child is a 'neglected child' within the definition thereof contained herein, shall enter its order or judgment accordingly under the provisions of this article." [Sec. 2594, R. S. 1919.]

In its definition of the words "neglected child" the Legislature has carefully, expressly and explicitly defined and limited the jurisdiction which it has conferred upon the juvenile court with respect to neglected children. Whenever that court undertakes, on the score of neglect, to supervise the care and custody of a child who is not "destitute, or homeless, or abandoned," etc., it is merely an intermeddler and its order is a nullity. But it is competent for the juvenile court to determine in a given case whether a child is a "neglected child within the definition thereof" contained in the statute; it is given express authority so to do; and its finding as to the existence of this jurisdictional fact, when it makes one, is of course conclusive as against collateral attack.

The proceeding in the juvenile court contemplated by the statute is special and summary. According to its mandate, "the court shall . . . proceed in a summary manner, and *if it shall determine that the child is a 'neglected child' within the definition thereof contained herein,* shall enter its order," etc. With respect to such a proceeding the rule obtains that "where a court of general jurisdiction proceeds to the exercise of special powers, wholly derived from the statute, and not exercised according to the course of the common law, or not pertaining to its general jurisdiction, its jurisdiction must appear in the record, and it cannot be presumed in a collateral proceeding. [34 C. J. 543.] This court has so held repeatedly. [Ellis v. Railroad, 51 Mo. 200; Eaton v. County of St. Charles, 76 Mo. 492; St. Louis v. Glasgow, 254 Mo. 262; Harvey v. Gregg, 177 S. W. 592.]

According to the record under review the Juvenile Court of Jackson County did not find the existence of any specific condition which would have placed the child, Margaret Marty, within the statutory classification of

306 Mo.—43

a "neglected child," nor did it find generally that she was a "neglected child" within the statutory definition thereof. It merely found that "Margaret Marty is neglected." The information by which the proceeding was initiated charged: "that she is in the custody of her mother, Olive B. Marty, who neglects and fails to properly care for said Margaret Marty." The court may have used the word "neglected" in the same sense in which it was used by the informant. But whether it did or not, its finding of mere neglect, *to which nothing can be added by intendment,* falls far short of "destitute or homeless, or abandoned, or dependent upon the public for support," etc., the conditions specified in the statute.

While the proceedings with respect to which we have heretofore applied the rule, that jurisdiction can not be presumed, but must appear from the record, have for the most part had for their purpose the enforcement of tax liens or the exercise of the power of eminent domain, there is no reason why the rule should not be equally applicable to a proceeding in which the State sought to effect a forfeiture of the natural rights of parents to the custody of their minor child.

The mandate of the statute that its provisions shall be liberally construed (Sec. 2612, R. S. 1919) cannot be held to authorize a construction which would enlarge the jurisdiction conferred upon the juvenile court beyond the limits which the act itself so carefully and precisely defines, or to make it any the less imperative that the record should disclose the facts which give rise to the jurisdiction whenever it is assumed to be exercised.

As the juvenile court failed to make a finding that the child, Margaret Marty, was a "neglected child" within the meaning of that term as defined by the statute, its judgment, under the rulings of this court heretofore referred to, is a nullity. It follows that so much of the opinion of the Court of Appeals as holds to the contrary, together with its judgment, should be quashed. It is so ordered. All concur, except *White* and *Walker, JJ.,* absent.