STATE of Missouri, Plaintiff-Respondent,

v.

Steven Wayne POGUE and Stanley Pogue, Defendants-Appellants.

No. 7344.

Springfield Court of Appeals.

Missouri.

Oct. 1, 1955.

Not to be published in the State Reports.

Cope & Ponder, Poplar Bluff, for defendants-appellants.

Rex A. Henson, Poplar Bluff, for plaintiff-respondent.

STONE, Judge.

In these statutory neglect proceedings in Butler County, a Class 3 county, under the Juvenile Act [Sections 211.310 to 211.510, incl.], Steven Wayne Pogue and Stanley Pogue, now four and two years of age, respectively (hereinafter sometimes jointly referred to as the minors), by their parents and natural guardians, Kenneth N. and Mrs. Janice B. Pogue (hereinafter sometimes jointly referred to as the parents), appeal from an order entered on April 13, 1954, overruling what the circuit court and counsel, and accordingly this court, refer to and treat as a motion to modify judgments theretofore entered in separate proceedings (consolidated on the motion to modify and on this appeal) on October 1 and 17, 1953, finding that the minors had been abandoned by their parents and placing the minors in the custody of Mr. and Mrs. Ben Boxx of Poplar Bluff, foster (but not adoptive) parents of Mrs. Pogue. (All statutory references herein are to RSMo 1949, V.A.M.S.)

The minors first complain that the circuit court was without jurisdiction to enter the judgments of October 1 and 17, 1953, (a) because there was no showing that any complaint had been filed with the prosecuting attorney or that he thereafter had investigated the facts and had reported in writing to the juvenile court as required by Section

211.360, (b) because no summonses were issued for the persons having custody or control of the minors, i. e., the Boxxes, as required by Section 211.370, and (c) because the parents were not notified of the neglect proceedings.

■ Referring seriatim to these points, it is apparent, from the plain language of Section 211.360, that the prosecuting attorney is to act "when any reputable person, being a resident of the county, shall file a complaint," and that the complaint contemplated by the law is a *written* one since an *oral* complaint cannot be *filed*. McEneny v. S. S. Kresge Co., 333 Mo. 817, 62 S.W. 2d 1067, 1069(2), affirming Mo.App., 53 S. W.2d 1075, 1076(2); Murphy v. Burlington Overall Co., 225 Mo.App. 866, 34 S.W.2d 1035, 1037(2). See also George v. School Dist. No. 24 of Red Willow Co., 157 Neb. 791, 61 N.W.2d 401, 404(3); Board of Registration Comm'rs v. Campbell, 251 Ky. 597, 65 S.W.2d 713, 718(13); Thompson v. Southern Express Co., 147 N.C. 343, 61 S.E. 182; Ritter v. United States, 3 Cir., 28 F.2d 265, 267(3). It is true that the transcript in the instant case does not show affirmatively that any complaint was filed with the prosecuting attorney or that he thereafter investigated and reported in writing to the juvenile court. But, "(t)here is not one scintilla of evidence in the record that this procedure was not strictly followed" [Neidert v. Terrill, Mo.App., 215 S.W.2d 745, 749(1)]; and, absent any proof to the contrary [contrast State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S.W.2d 206, 208–209(2)], we must indulge the presumption that the prosecuting attorney discharged his official duties faithfully and in accordance with the law. Wymore v. Markway, 338 Mo. 46, 89 S.W.2d 9, 11(2), 14(12); State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W.2d 174, 178(8); State ex rel. Ball v. State Board of Health, 325 Mo. 41, 26 S.W.2d 773, 777(6); Norton v. Lynds, Mo.App., 24 S.W.2d 183, 186(12). Certainly, improper action on his part cannot be presumed. In re Moynihan, 332 Mo. 1022, 62 S.W.2d 410, 419(12), 91 A.L.R. 74; Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S.W.2d 575, 578

(7, 8); Hurtgen v. Gasche, Mo.App., 227 S.W.2d 494, 497(1).

■ In view of the fact that the Boxxes voluntarily appeared in court at the hearings on October 1 and 17, 1953, prior issuance and service of summonses on them obviously was not a prerequisite to rendition of valid judgments. Section 211.370. Cf. State v. Wickliff, Mo.App., 114 S.W.2d 158, 160(2).

In recognition of the fundamental and abiding truth that reasonable notice to those whose rights are to be affected by a summary proceeding is a veritable cornerstone in our judicial system [Hoppe v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 350(7), 23 A.L.R.2d 846], the legislature has provided wisely that, in statutory neglect proceedings, "the parents of the child, if living and their address known, * * * shall be notified of the proceedings." Section 211.370. And, our Supreme Court has said that the rule that "'where a court of general jurisdiction proceeds to the exercise of special powers, wholly derived from the statute, and not exercised according to the course of the common law, or not pertaining to its general jurisdiction, its jurisdiction must appear in the record'" is applicable in proceedings of this character [State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617, 622(3)], although it should be noted that the judgment itself need not recite all jurisdictional facts, it being sufficient if such facts appear from any part of the record. Ex parte Schrier, 328 Mo. 726, 41 S.W.2d 178, 179(1).

■ As to the jurisdictional fact under discussion here, the court expressly found in the first judgment on October 1, 1953, "that the whereabouts of the parents are unknown." Since the evidence taken at the hearing immediately preceding this finding is not preserved in the transcript on appeal, since counsel for the minors and their parents state with commendable frankness that "we believe the court was justified in finding in his orders that the address of the parents at that time was unknown to the court," and since the court undoubtedly had authority to determine this jurisdictional

fact, the quoted determination should, on this review of the order overruling the motion to modify, be regarded as conclusive. State ex rel. Dew v. Trimble, supra, 269 S.W. loc. cit. 622(2); State ex rel. Compagnie Generale Transatlantique v. Falkenhainer, 309 Mo. 224, 274 S.W. 758, 760 (3); Hadley v. Bernero, 103 Mo.App. 549, 78 S.W. 64, 66. Thus concluding that want of notice to the parents did not vitiate the proceedings, we proceed to consideration of the case on its merits.

After the marriage of Kenneth and Janice on May 18, 1949, they lived for a short time in Poplar Bluff and then moved to St. Louis. Janice was with her foster parents in Poplar Bluff for about four months before, and about one month after, Steven's birth in July, 1951. Within a few weeks after Janice took Steven to St. Louis, the Boxxes visited there. Janice admitted that she then told the Boxxes that, although *she* did not want to be separated from Steven, "they (the Boxxes) would have to take him because (*Kenneth*) wanted them to." However, it was not long before the parents came to Poplar Bluff for Steven, whom the Boxxes refused to surrender because he was sick and under medical treatment. As Mrs. Boxx stated it, "I said just leave him, he can't go—when he gets well, he can go and we will write." Shortly after Christmas, 1951, the Boxxes wrote Janice and "she came and got" Steven.

During 1952, Kenneth and Janice moved to Des Moines, Iowa, where Kenneth's father and stepmother lived. Janice, bringing Steven with her, visited in the Boxx home on several occasions from two to five months at a time, as Mrs. Boxx said. "She come and stayed with him (Steven) * * * and we supported the baby and her too." Janice came to Poplar Bluff in January, 1953, remained at the Boxx home until April or May, returned to Kenneth in Des Moines for about one week, and apparently visited again in the Boxx home before Stanley, the younger child, was born in Des Moines on June 11, 1953. In response, as Janice said, to a telegraphed invitation from the Boxxes, she and Kenneth brought both children to Poplar Bluff about July 4, 1953; and, when the parents returned to Des Moines, they left Steven with the Boxxes. About three weeks later, i. e., during the latter part of July, 1953, Janice with Stanley, the baby, again came to Poplar Bluff and stayed in the Boxx home until about September 4, 1953.

Although Mrs. Boxx stated that Janice had not wanted to have either child, had said that she "hated" Stanley, and had suggested that she might do away with him by an overdose of paragoric, apparently Mrs. Boxx did not take these comments too seriously and did not regard Janice as unfit to rear the children, for she (Mrs. Boxx) further testified that, when Janice returned to Des Moines about September 4, 1953, "I tried to get her to take" both children. "I said 'Janice, this is the thing for you to do, is to take them back with you'"—"I begged her to take these children with her." According to Mrs. Boxx, Janice said that she did not want to take the children because, "if I take them, it will be the same thing with Kenneth." On the other hand, Kenneth said that "they (the Boxxes) wanted us to leave the children," while Janice said that her foster parents had wanted Steven, the older child, and that she finally had agreed to leave both children—"I wouldn't separate them." "I was going back to work and thought maybe we could get a place for the boys to live" but "I got up there and got sick and couldn't." Both parents specifically denied any intention to abandon their children.

Before the parents left for Des Moines about September 4, 1953, there was an understanding that they would send money, apparently $20 per week, to the Boxxes for the children's care, but nothing actually was contributed thereafter by the parents. In October, 1953, "after * * * the court order on Steve," Boxx reached Kenneth over long distance at his place of employment in Des Moines. Boxx asked "why haven't we heard from you, and (Kenneth) said we didn't have any money to send you." Kenneth inquired "how is the boys and I (Boxx) said okay." *The statutory neglect proceedings were not*

*mentioned by Boxx.* At the hearing, Janice's alleged illness was assigned by the parents as the reason for their failure to send money for care of the children, but there was no adequate explanation of their admitted failure to communicate with the Boxxes from September 4, 1953, until they came to Poplar Bluff at Christmas, 1953, with presents for their children and the Boxxes and, as the parents said, with the intention of taking "the boys back to Des Moines with us." The parents, then learning of these statutory neglect proceedings for the first time, were·denied admission to the ·Boxx home or visitation with their children. The motion to modify was filed promptly on January 2, 1954.

The foregoing statement of facts, although incomplete in detail, will suffice to demonstrate the obvious irresponsibility of Kenneth and Janice, which is nonetheless deplorable even though, as opposing counsel agree, it is not uncommon in youthful parents of our time. And, the record clearly justifies the further comment that the parents imposed upon and took advantage of the Boxxes, whose unselfish conduct in rearing Janice as a foster child, and after her marriage, in caring for both her and her children from time to time (and thus materially assisting Kenneth in the discharge of financial obligations legally and morally imposed upon him) is deserving of recognition and commendation.

■ *The adjudication by the court in each neglect proceeding rested solely upon a finding that the child had been abandoned by its parents,* that having been the *only* respect in which the petitions filed by the prosecuting attorney had charged that the minors were "neglected" within the meaning of Section 211.310. "Abandon" is defined generally as "to relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person to whom one owes duty, allegiance, or·the like." Webster's New International Dictionary (2nd Ed.), p. 2. And, pertinent in this statutory neglect proceeding is the definition of "abandonment" in In re Appli-

cation of Graham, 239 Mo.App. 1036, 199 S.W.2d 68, 74(4), an adoption case, i. e., "'conduct of the parents indicating a settled intention to leave the child permanently in the care of others.'" See also In re Watson's Adoption, 238 Mo.App. 1104, 195 S.W.2d 331, 336(2). In the light of these definitions, there would seem to have been ample room for argument as to whether the minors in the instant case were "abandoned" children in October, 1953, when the judgments were entered in the neglect proceedings; and, since Janice admittedly was with her children in the Boxx home until she returned to Des Moines with Kenneth on September 4, 1953, it is obvious that Steven had not been "abandoned" 2½ months prior to September 18, 1953, or about July 3, 1953, and that Stanley had not been "abandoned" 4 months prior to October 13, 1953, or about June 13, 1953, as was charged in the petitions filed in the neglect proceedings. However, since the court found that the minors had been abandoned when judgments (valid as we have found heretofore) were entered on October 1 and 17, 1953, and since the evidence on which those adjudications were made is not before us on this appeal from the order overruling the motion to modify, we should not and cannot convict the trial court of error in the adjudications that the minors were "neglected children."

But, the parents were not *permanently* deprived of their children by·the adjudications in October, 1953, for "'(a)bandonment continues until parental care and support are resumed, and it does not follow that the purpose to forego all parental duties may not be repented of, and in a proper case all parental rights again acquired.'" In re Application of Graham, supra, 199 S.W.2d loc. cit. 74(5); Hyman v. Stanley, Mo.App., 257 S.W.2d 388, 391(5). See also Morris v. McGregor, Mo.App., 269 S.W. 2d 171, 175(2); Shepard v. Shepard, Mo. App., 194 S.W.2d 319, 328(11). Although, during the earlier years of their married life,·Kenneth was "jumping from job to job" and ·he and Janice had "some rough times * * * financially," the record before us shows, *without conflict or contra-*

*diction,* that Kenneth had been employed at Hubbell Avenue Super Market in Des Moines for about two years prior to the hearing on the motion to modify; that his then wage was $75 per week; and that, since November, 1953, the parents had occupied "a very nice small four room home with full bath * * * automatic gas heat and hot water, * * * located in a good neighborhood with a large yard, 143 by 100 feet," for which they paid $60 per month. And, although Kenneth and Janice apparently had considerable marital trouble and their conduct, in many respects, is not to be approved or condoned, nevertheless there is nothing in the transcript rising to the dignity of proof that either is physically incapacitated, mentally deficient or morally unfit.

As the natural guardians of their minor children, parents have the primary right to custody of such children [State ex rel. White v. Swink, Mo.App., 256 S.W.2d 825, 829(5)], are presumed, in the absence of proof to the contrary, to be fit and qualified to exercise that natural privilege [In re Cole, Mo.App., 274 S.W.2d 601, 608(3); Cox v. Carapella, Mo.App., 246 S.W.2d 513, 514(1)], and, as has been "the settled law from time immemorial" [Bell v. Catholic Charities, Mo.App., 170 S.W.2d 697, 699(1)], should never be denied their right, by nature and by law, to have such custody unless it is made manifest to the court that the parents, for some strong and cogent reason, are unfit or incompetent to care for their children or unless the welfare of the children, for some special or extraordinary reason, demands a different disposition. In re Richardet, Mo.App., 280 S.W. 2d 466, 471(2); Swan v. Swan, Mo.App., 262 S.W.2d 312, 314(2); Wilson v. Wilson, Mo.App., 260 S.W.2d 770, 776(5); Edwards v. Engledorf, Mo.App., 192 S.W.2d 31, 33(2); Ex parte De Castro, 238 Mo. App. 1011, 190 S.W.2d 949, 959(13). One who would deny custody of minor children to their parents has the burden of proving the parents' unfitness. Williams v. Williams, 240 Mo.App. 336, 205 S.W.2d 949, 953(2).

Of course, the welfare of the children is the paramount consideration to which all others must yield [Ex parte Ferone, Mo.App., 267 S.W.2d 695, 700(1); Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845, 847(2); Ex parte Schultz, 237 Mo.App. 1107, 180 S.W.2d 613, 615 (1)]; but, until otherwise shown, it is to be presumed that the best interests of the children will be served by committing them into the custody of their parents. Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 800, 6 L.R.A. 672; Vance v. Vance, Mo.App., 203 S.W.2d 899, 901(4). And, it is clear that the question of welfare is not to be determined on mere financial considerations [Williams v. Williams, supra, 205 S.W.2d loc. cit. 953(4); Ex parte Archer, Mo.App., 253 S.W. 1095, 1096(5)], for the best interests of children do not necessarily lie with the custodian who has greater worldly possessions. State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140, 1141; Edwards v. Engledorf, supra, 192 S.W.2d loc. cit. 34(4).

Although evidence as to past conduct is material insofar as it may clarify and cast light on the present state of affairs [In re Richardet, supra, 280 S.W.2d loc. cit. 471–472(9); In re Cole, supra, 274 S.W.2d loc. cit. 610(6)], the right of parents to custody of their children must be determined with respect to existing conditions [Ex parte De Castro, supra, 190 S.W.2d loc. cit. 959(14); Ex parte Ferone, supra, 267 S.W.2d loc. cit. 700]; and when parents, whose unfitness as of the present is not demonstrated, are able to care for their children, fond grandparents have no legal right to continued custody of the children, regardless of their willingness and ability to rear such children. Abel v. Ingram, 223 Mo.App. 1087, 24 S.W.2d 1048, 1049(3); Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215, 220(9). Reluctant as we are to differ with the capable and conscientious trial judge, we are unable to escape the conclusion that, on the record presented, *which we must take as it comes to us* [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2)], the parents should not have been

denied custody of their children as of February 20, 1954, when the motion to modify was heard.

■ By awarding custody to non-resident parents with permission to take the minors out of the state, the circuit court would not have divested itself of continuing jurisdiction over the minors in the neglect proceedings [Conrad v. Conrad, Mo.App., 296 S.W. 196, 198(7); State ex rel. Coffield v. Buckner, 198 Mo.App. 230, 200 S.W. 94, 95(4)], for Section 211.310 plainly provides that jurisdiction acquired over their persons shall continue, for the purpose of the Juvenile Act, until the minors shall have attained the age of twenty-one years. Dansker v. Dansker, Mo.App., 279 S.W.2d 205, 208(1). Nothing to the contrary should be implied from the language, by way of dicta, in Morris v. Mc-Gregor, supra, 269 S.W.2d loc. cit. 175(2), and Hyman v. Stanley, supra, 257 S.W.2d loc. cit. 391–392.

■ However, in view of the parents' past instability, the lapse of more than nineteen months since the hearing on the motion to modify, and the fact that we have no knowledge of present conditions bearing upon the parents' fitness to have the custody of their children at this time, recognition of the regnant principle that the welfare of the minors is of paramount importance dictates that we should not now order a change of custody without a further hearing at which the situation as of the date of such hearing may be developed fully. Therefore, the order of April 13, 1954, overruling the motion to modify is set aside and the cause is remanded for further hearing and proceedings not inconsistent with the views herein expressed.

McDOWELL, P. J., and RUARK, J., concur.