In the interest of J————, a minor, under the age of seventeen years.

No. 8052.

Springfield Court of Appeals. Missouri.

May 8, 1962.

Amos Wight, Ewing, Ewing, Ewing, Carter & Wright, Nevada, for appellant.

Gordon R. Boyer, Lamar, for respondent.

RUARK, Presiding Judge.

As an all too frequent by-product of a child marriage, this case reaches us as an appeal from the judgment and order of the juvenile court in respect to the custody of a little girl, not quite three and a half years old at time of the hearing.

The facts historically are: J and B were married June 1, 1957. At that time J (herein referred to as the father) was approximately nineteen years of age. B was fourteen. The child was born February 26, 1958. The marriage, as might be expected, was not a success. There is no need to go further with that. Sometime later, J brought his wife and the child to B's maternal grandfather, in the night, unloaded them, and stated, "Grandpa, I can't take care of her and keep my payments up on my car," and left. The grandfather was (at trial time) 77 years old and was unable to care for the child permanently. The result was that she was taken to her (the child's) maternal grandmother (mother of B), who has since that time had the actual rearing of the child except for occasional overnight or short visits with the grandparents where she was first left.

When the child was 18 months old, B brought suit for divorce against the father. The petition alleged previous separations and marital difficulties, including the use of intoxicating liquor. On October 21, 1959, B was granted an uncontested decree of divorce from the father, with care and custody of the child and $10 per week support money for the child.

The mother was home, with her mother and her child, only off and on. She has, in the meantime, been remarried, had another child (who is with an uncle), and been divorced again. This mother, age 18 at time of trial on July 24, 1961, has demonstrated her present inability and unfitness to have the child. We will not go further with her conduct except to say that this proceeding was instigated when the grandmother (her mother and the one who has had the actual care and rearing of the child) made complaint to the juvenile officers because B had climbed into the cab with a truck driver and headed for Texas.

We return to the father. He did not comply with the order of support. After he was hailed into court on this account, his support payments were reduced to $7 per

week. He paid approximately seven installments. In a letter addressed to his ex-wife's attorney in respect to his failure to meet his obligations as a father he seems to indicate some doubt as to parentage. He refers to the little girl as "that kid," and he states that "I'm not going to pay for something that I don't own." His contact with the child has been slight. On one occasion he came to the home of the maternal grandmother but got into some kind of a disturbance, was arrested, and paid a fine for disturbance of the peace. At another time he, and his new wife, called at the maternal grandmother's home and left her $20 for the child at Christmas. This seems to have been about his only contact with the child or indication of interest in her up until the time these proceedings were filed. Then he came into the *circuit* court with a motion to modify the divorce decree, asking custody "and that all unpaid child support payments to plaintiff * * * be cancelled and forgiven."

Now let us look at the other side of the father's picture. He is now 23 years old. He has been employed in an industry in an adjoining state for "going on" five years. He makes take-home pay of $75 or $80 per week. At time of trial he had been remarried for about 18 months. He has a child (a boy of eight months) by this second marriage. He and his wife live in a two-bedroom home with new furniture. He says he does not now drink and is in good health. He does not attend church regularly. There is no intimation that it is not a well-ordered, happy home, and his present wife has expressed a desire to take the child and treat her as her own.

In respect to the grandmother with whom the child has spent most of her life: She was married first for seven years, again for ten years, and was divorced both times. For four years she has been married to her third husband, a widower, and her husband's youngest daughter, age 14, lives with them. (Two others of his daughters are married and gone from the home.) She and the husband own (together) a good, modern brick house. The husband is steadily employed and has a very substantial income from such employment. The marriage seems to be a successful and happy one. The husband (that is, the step-grandfather) says he thinks as much of the child as of his own children. The grandmother is active in church work and the neighbors say she is a good housekeeper, looks after the children well, and that she and the child here involved seem like mother and daughter.

The case was tried before the juvenile court much like a custody case in divorce court. At the conclusion of the evidence the court made oral findings that both the parents love the child; that the grandmother has had the child for more than two years and at other intervals since the child was born; that the home of the grandmother and step-grandfather is a nice home; that such grandparents have affection for the child and she is treated in the same way as the step-grandfather's own children; that the father of the child has not attempted to support the child within his ability; that her best interest would be served by placing her with the grandmother, with certain visitation rights in the father and the paternal grandparents; that beginning in 1962 the father should have custody from June 15 until August 15 of each year.

The child was made a ward of the court and jurisdiction was retained until the child becomes 21 years of age. The child was remanded to custody of the grandmother, subject to the visitation rights aforementioned. The father has appealed.

Since both parties agree that the juvenile division of the circuit court had jurisdiction, we will not pursue that question. (See Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 327; State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617, 621.)

The appellant premises his attack upon the proposition that since it is conceded that, in the present circumstances, the natural mother is unfit or unable to care for

the child, it follows that the father and natural parent is to be preferred over the grandmother, and that the evidence does not show the father to be unfit for such custody under the present circumstances.

It has been held, over and over again, sometimes in poetic language, that, as respects the *right* to custody, the natural parent has legal preference over all other persons (grandmothers included), for it is presumed, in absence of proof to the contrary, that the welfare of the child will be best promoted by the natural parent's custody. Wilson v. Wilson, Mo.App., 260 S.W.2d 770; Mothershead v. Mothershead, 236 Mo. App. 737, 161 S.W.2d 669; In the matter of the minor children of F. B. v. Caruthers, Mo.App., 323 S.W.2d 397, 401; State v. Greer, Mo.App., 311 S.W.2d 49; State v. Couch, Mo.App., 294 S.W.2d 636. But this is always subject to the qualifications (a) that the parent be a fit (and able) person to have such custody (In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 472; Swan v. Swan, Mo.App., 262 S.W.2d 312, 315; Tomlinson v. French Institute of Notre Dame De Sion, 232 Mo.App. 597, 109 S.W.2d 73(4); Mothershead v. Mothershead, supra, 236 Mo.App. 737, 161 S.W.2d 669, 675) and (b) *transcending all else, the welfare of the child is entitled to first consideration.* To this all other considerations must yield. Testerman v. Frederich, Mo.App., 323 S.W. 2d 522; State v. Pogue, Mo.App., 282 S.W. 2d 582, 588; Le Claire v. Le Claire, Mo. App., 352 S.W.2d 379; Harwell v. Harwell, Mo.App., 355 S.W.2d 137; and all cases supra. As to the fitness of the father, the *present* appearance is that he is qualified in the sense that he is able and willing to take the child into his home. But the home he has established is not of long duration. Duration of the period in which he appears to have attained maturity and a sense of responsibility toward his child is not long. Time alone can answer the question as to whether the condition has become fixed. The courts are not inclined to experiment with such a sacred thing as the welfare of a child. Irvin v. Irvin, Mo.App., 357 S.W.

2d 254; Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, 367; Stricklin v. Richters, Mo.App., 256 S.W.2d 53, 57. The juvenile court, however, has more flexible powers than the courts which deal with fixed rights and permanent status. Sections 211.011 and 211.041, V.A.M.S.; In the Interest of Ronald C———, Mo.App., 314 S.W.2d 756, 760. ·And when confronted with hard choices they must necessarily make orders which affect custody only temporarily. Hyman v. Stanley, Mo.App., 257 S.W.2d 388. The order placing custody for the present in the grandmother is subject to change. Quite obviously the judge was attempting to work out a method whereby the child could be left in a home with those whom she loves and who love her, and still give the father a chance to establish a relationship between himself and his present wife and child and ·this daughter, which relationship, if the course of events so justified, *could* eventually lead to a more permanent arrangement.

We think the court was doing the best it could to attain this end and that it did not abuse its discretion and was not in error in ordering custody in the grandmother with visitation periods in the father. The thing we *are* doubtful about is whether the first visitation periods with the father are too long or too exclusive. The order, probably inadvertently, did not provide for any visitation of the child during the two months' period by the grandmother, the step-grandfather, the great-grandparents, or the natural mother. This could be a critical period for her. The child is now approximately four years old. To abruptly jerk her away from the only home she has ever really known, and away from the persons to whom she has been accustomed as mother and father, persons whom she loves and who love her, and take her out of the state and into a strange household composed of a father whom she can but barely know, with a stepmother whom, as far as the evidence is concerned, she has barely met (however kindly and conscientious the stepmother may be), and with an infant child, away

from all familiar surroundings, for a period of two months at the beginning, with no contact with those whom she has known, seems to us to be an abrupt beginning which could result in bewilderment and emotional trauma.

Accordingly the judgment is modified to permit reasonable visitation of the child by the persons above named during the father's two months' period of custody. If the father really has the welfare of his child at heart he will welcome such visitation.

As so modified, the judgment is affirmed, and the costs are taxed against the appellant.

McDOWELL and STONE, JJ., concur.