In the Interest of B. B. and R. B., minors.

J. B., Appellant,

v.

The JUVENILE OFFICER, and Mr. and Mrs. C. M., Respondents.

No. 37209.

Missouri Court of Appeals, St. Louis District, Division Two.

May 25, 1976.

Elizabeth R. Levine, Legal Aid Society, Clayton, for appellant.

David B. Agnew, St. Louis, Alvin L. Mayer, Clayton, Pat Karman, Juvenile Div., Rachel Eidelman, Public Defender Bureau, St. Louis, for respondents.

STEWART, Judge.

J.B., the father of R.B., a boy nine years of age, appeals from an order of the Juve-

nile Court which granted care, custody and control of R.B. to the Division of Children's Services and directed that R.B. be placed in the home of his maternal grandparents. We affirm.

J.B. and Betty were married in 1958. This was the second marriage for each of them. Three children were born of the marriage, only R.B. is the subject of this proceeding.[1] In early 1970 Betty was confined in State Hospital in the City of St. Louis. In March of that year the maternal grandparents filed a complaint alleging that the children were neglected. This case was closed with no action having been taken.

In February 1971 a hearing was had upon a referral which was made in December 1970. The court found the children of the marriage to have been neglected and it granted custody to Mr. and Mrs. Carl Maddox, the maternal grandparents. J.B. was given visitation rights and ordered to make payments for the support of the children. At that time, Betty, the mother, had been missing from State Hospital since July of 1970 and her whereabouts were unknown. J.B. at the time was having a drinking problem.

J.B. and Betty were divorced in 1972. J.B. subsequently married Mahala. He then filed a motion seeking custody of the children. Before the motion could be heard he and Mahala were divorced. The marriage had lasted 6 months. J.B. was not in a position to ask for their custody and the custody remained in the grandparents.

In late 1974, Betty returned and B.B. went to live with her. A temporary order was made giving temporary custody of R.B. and B.B. to Children's Services. In turn, B.B. was permitted to remain in the physical custody of Betty and R.B. with the grandparents. Within three months of the order Betty left the State of Missouri and B.B. went to live with her father, J.B. who had married Lorraine.

A motion was then filed on behalf of J.B. seeking custody of B.B. and R.B. It is this motion which is the subject of this appeal.

At the time of the hearing J.B. was 46 years of age and had been a steady employee of the City of St. Louis for 16 years. He had been married to Lorraine for close to 5 months. They were living in her eight room house with Lorraine's fourteen year old daughter who shared a room with B.B. Lorraine's son, age seventeen, had his own room and there was a room available for R.B. The house was well kept. There was an adult in the house most of the time. The children were given hot lunches and Mrs. Lorraine B. expressed a desire to have B.B. and R.B. in the home. There was every indication that J.B. no longer had a drinking problem.

R.B., who was eight years of age at the time of the hearing, had lived with his grandparents since he was three years of age. Mr. Maddox, age 66, is retired. Mrs. Maddox is 58 years of age. The boy is well adjusted and is doing well in school. He attends Sunday School regularly and is a member of the Cub Scouts.

The visitation between J.B. and his son has not been satisfactory. There were times when three months would pass between visits. This failure cannot be placed wholly upon J.B. The visitation improved when arrangements were made to pick up the boy at the Division of Children's Services. J.B.'s present wife, Lorraine, has seen R.B. on only three occasions. J.B. has made payments for support and has purchased gifts for the children.

R.B. was asked how he liked living with his grandparents and he replied "Fine." He expressed uncertainty when asked his preference. He finally testified that given the choice he would rather live with his father.

1. A daughter, B.B., age 13, was placed with the father after the maternal grandparents asked to be relieved. No appeal was taken from that order. At the oral argument counsel advised that the mother, who had left the jurisdiction, had returned, and that in recent months the court has placed B.B. with the mother. An older son, L.B., is in a home where he is progressing toward reunion with the family.

At the conclusion of the hearing the court ordered that care, custody and control of R.B. be given to the Division of Children's Services. The court further ordered that R.B. be placed in the home of his maternal grandparents. At the time the court made its order it made clear its desire to eventually re-unite the child with his father.[2]

The general principles of law to be applied are not in dispute. The primary factor to be considered by the court in performing the onerous task of determining the right to custody of the minor child is the welfare and best interests of the child. In making this determination the natural parent has preference over all other persons because it is presumed, absent proof to the contrary, that the parents have the greater interest and will best promote the welfare of the child. § 211.011, R.S.Mo.1969. In Interest of J., 357 S.W.2d 197, 200 (Mo.App. 1962). It has also been held that the courts will give consideration to the preferences of the child. J. v. E., 417 S.W.2d 199 (Mo.App. 1967). Each case, however, must be evaluated and determined on its peculiar facts rather than in terms of academic rules, with the best interest of the child as the paramount goal. M__L__ v. M__R__, 407 S.W.2d 600, 603 (Mo.App.1956).

In our review of this case we are governed by Supreme Court Rule 73.01(3) and as was best said in H__B__ v. R__B__, 449 S.W.2d 890 (Mo.App.1970) l.c. 891:

"On this review we bear in mind the solemn responsibility cast upon a trial judge who must decide issues of child custody. At trial his judicial discernment is challenged; he becomes steeped in the atmosphere of the controversy; his ability to assess the character of the witnesses and to weigh their testimony exceeds ours."

In this court-tried case we must affirm "unless there is no substantial evidence to support [the judgment], unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Murphy v. Carron, 536 S.W.2d 30 (Mo.1976).

In this case J.B.'s children including R.B. were adjudged neglected in 1971. The father later married Mahala and attempted to establish a home. He filed a motion to recover the children but at the time of the hearing on that motion J.B. and Mahala had been divorced. This marriage failed after only 6 months. At the time the present motion was heard there were definite signs of progress toward a stable home life on the part of J.B. However, he had been married to Lorraine for only 5 months. His wife had met his son on only three occasions. J.B. had had very little contact with R.B. While the boy expressed a preference to be with his father, he expressed no dissatisfaction with his situation in the home of his grandparents. His preference is only one consideration in proceedings of this nature. Graves v. Wooden, 291 S.W.2d 665 (Mo.App. 1956).

J.B. argues that the "aim [of the court] should be to return the child to the natural parent." It is evident from the comment of the court and its order that this is the precise aim of the court.[3]

The problem facing the trial court was whether it was to the best interest of the child to be removed from a settled and stable atmosphere in which he is functioning well and place him in an environment which posed questions in the mind of the court and the Juvenile Officer.

The court properly considered the past experience in this case as criteria for the action which he took in this cause. There was a reasonable basis for the court to be concerned about the stability of J.B.'s home, and trauma of removing R.B. from a settled home environment. See In Interest of J__, 357 S.W.2d 197 (Mo.App.1962). We

---

2. "At this time R.B. will remain in the home of the grandparents until there is a further relationship developed between the natural father, and also until the father can show to the Court here that this relationship with his new wife is going to work and his stability as a father will be developed over the months and years ahead."

3. Footnote 2 ibid.

are of the opinion that the court in the case entered an order conducive to the welfare and the best interest of R.B.

The order is affirmed.

CLEMENS, P. J., and DOWD, J., concur.